All rise, the court is now in session. Please be seated. I'll announce the case. Can I have the clerk? 3-16-0154, People of the State of Illinois, Channeled by Mark Oswald v. Garrett Motzko, Adelaide by Michael Dubé. You may proceed. May it please the court, counsel. This is a state appeal of the trial judge's ruling related to defendant's motion to suppress and petition for dissent. Defendant was arrested for DUI at the hearing on defendant's motion to suppress. The following evidence was presented. On August 11, 2015, at about 11.45 p.m., defendant had a single-vehicle motorcycle crash on a curb at Main and Crescent Streets near Methodist Hospital in Peoria. The security guard from Methodist witnessed the accident and he told Officer Bischoff that he had been traveling at a high rate of speed before he crashed and the car smelled the odor of an alcoholic beverage on defendant's breath. Bischoff found defendant sitting upright on the ground being cared for by EMTs. He had his helmet off at the time. Bischoff spoke with defendant as he was being treated. Defendant informed him that he had been driving from downtown Peoria, but defendant would not say where he had been and he did not give clear answers as to what had caused the accident. Defendant was taken to Methodist and Bischoff administered an HGM test to defendant when he was unattended in a hospital room. Defendant claimed he was blind in one eye, but Bischoff took that into account and he noted that both eyes tracked the stimulus. Defendant admitted to drinking one 20-ounce beer and Bischoff said he could smell the odor of alcohol on defendant's breath. His eyes were bloodshot and glassy. Defendant exhibited five clues on the HGM test and defendant also refused a PBT. Bischoff could not perform other field sobriety tests because defendant's ankle was injured and he had a lacerated knee. The video from Bischoff's car showed that the road was clear, dry, and well-lit at the accident scene. Based on his observations of defendant and the result of the HGM test, Bischoff arrested defendant for DUI. Bischoff testified that after he arrested defendant, he asked defendant to provide blood and urine samples at the hospital. Defense counsel objected to further questioning regarding his testing and the prosecutor quoted 625 ILCS 5-11-5012C regarding the admissibility of post-arrest chemical testing and he argued that evidence of defendant's refusal to submit to chemical testing was admissible in the situation. Defense counsel argued that evidence of post-arrest testing does not come in in a probable cause hearing. The trial judge sustained defendant's objection. She found that based on her interpretation of section 11-501.2C that the evidence was not admissible. The trial judge denied people's motion for a directed finding on defendant's motion to suppress and presented their case in a sheet from which Bischoff essentially restated his grounds for arresting defendant for DUI and the video from Bischoff's car was admitted into evidence. The trial judge questioned the HGM testing based on Bischoff's experience, his knowledge of the standards, and how Bischoff conducted the test and the judge granted defendant's motion to suppress. The people filed a notice of appeal of the motion to suppress the decision and three weeks later the judge granted defendant's position to rescind his statutory summary suspension following a hearing where the parties stipulated to Bischoff's testimony from the motion to suppress hearing and the people presented the brief testimony from defendant which corroborated Bischoff's testimony about what defendant had told him and that he had also used the PBT. The trial judge erred in granting defendant's motion to suppress on two grounds. First, the trial judge erred in sustaining defendant's objection to the omission of evidence regarding whether defendant refused post-arrest chemical testing where the judge found that section 11-501.2C1 limits evidence of such refusals  This section states in part, quote, if a person under arrest refuses to submit to chemical testing under provisions of section 11-501.1, which is the implied consent statute, evidence of refusal shall be admissible in any civil or criminal action or proceeding arising out of acts alleged to have been committed while the person under the influence of alcohol was driving or in actual physical control of a motor vehicle. At the motion to suppress hearing, Bischoff testified that after he had arrested the defendant, he asked him to provide blood and urine samples. And as the prosecutor began a follow-up question about this request, that's when defense counsel objected. And the prosecutor raised his argument that under 11-501.2C, defendant's refusal to submit was admissible and defense counsel argued that post-arrest testing does not come in because Bischoff did not consider this when making the arrest. The trial judge sustained defendant's objection, quote, based on the actual language of the statute. The trial judge based ruling on, quote, what happened prior to the defendant being placed under arrest, not what happened after. At the motion to reconsider hearing, the trial judge found that the same section is subject to a narrow interpretation in terms of when you're dealing with a motion to quash. And she stated the issue would be what's happened up to the time of the arrest. The statute clearly states if a person under arrest refuses chemical testing, this is admissible in any related civil or criminal proceeding. Thus, the trial judge's misreading of the statute prohibits admission of defendant's post-arrest refusal of chemical testing and is contrary to the plain language of the statute. The Fourth District in Garriott, I believe I'm printing this correctly, stated that the implied consent statute, that under the implied consent statute, a defendant arrested for committing DUI must either submit to a breathalyzer or face statutory summary suspension. And the court held that a refusal to submit to a breathalyzer is admissible regardless of whether the refusal occurs within the provisions of the implied consent statute. So under Garriott and the language of the statute, under 11-501.2C1, it specifically allows the admission of evidence regarding defendant's post-arrest refusal to submit to chemical testing, including in proceedings on a motion to suppress. Thus, the trial judge misinterpreted this section to improperly deny evidence of defendant's post-arrest refusal. Second, the trial judge erred in granting defendant's motion to suppress where the trial judge's findings that Officer Bischoff did not properly perform the HDM test was against the manifest weight of the evidence. In our main brief, people quoted portions of both McAllen 1 and McAllen 2 cases regarding HDM testing. Bischoff's testimony showed that he was trained in the administration of the HDM test and he conducted the test according to the NHTSA protocols that were described in McAllen 1. Bischoff asked defendant if he had any medical conditions that might affect the test and the defendant only claimed that he had blindness in one eye. McAllen noted that an officer is to ask the subject if they have a medical impairment that would affect the test and if they claim to have such condition, the officer should still administer the test if possible. The medical records show that the trial judge, sorry, the medical records of the trial judge, refused to admit and that this court unsealed showed that defendant's eyes were both fine and he did not have a head injury. The medical records also showed that the medical staff believed the defendant was intoxicated. Based on the trial judge's refusal to admit the medical records, the judge incorrectly ruled that Bischoff did not perform the HDM test properly due in part to the judge's speculation that defendant might have a head injury. Bischoff took defendant's claim of right eye blindness into account but he noted that the right eye did attract the stimulus and he explained that the test is designed to determine whether a person has a condition that might affect the test. McAllen 1 noted that if four or more clues are present, the subject is determined to have failed the test and be impaired. Bischoff testified that the defendant exhibited five out of six clues on the HDM and thus under McAllen, the defendant was impaired. The trial judge said that Bischoff testified that the HDM can determine the level of intoxication. The trial judge erred when stating this because Bischoff never testified that the HDM can show a specific level of intoxication. Thus, the record shows that the trial judge erred in granting defendant's motion to suppress due to a misinterpretation of the law and where the trial judge's factual findings regarding the HDM testing were against the manifest weight of the evidence. We have no argument to make on the second issue. We're going to stand on our brief on that and we'll briefly go over our third issue which is the trial judge lacked subject matter jurisdiction here to grant defendant's petition to rescind because notice of appeal of the motion to suppress ruling had been filed more than three weeks earlier and the trial judge granted the petition to rescind based on her decision to exclude post arrest medical records on testimony from the motion to suppress hearing and on her grant of the motion itself. On March 6, 2012, people filed a timely appeal of the lower holdings on the motion to suppress and the motions to reconsider the grant. But three weeks later, the trial judge had held a hearing on that petition to rescind and at that hearing, when making her ruling, the judge specifically relied on the evidence ruling as a decision from the prior motion to suppress hearing. The judge stated that Officer Bischoff had not spoken with EMTs or hospital staff before he arrested the defendant and the judge said, so that's the distinction of mind, what was happening pre-placing the person under arrest. Thus, at the petition to rescind hearing, the trial judge denied admission of the medical records due to a misinterpretation of Section 11-501.2C1 at the prior motion to suppress hearing. Because the people filed a timely notice of appeal of the grant of the motion to suppress and evidence from that motion to suppress hearing and the trial judge's decisions from that motion were material to the judge's decision on the petition to rescind, the trial judge lost subject matter jurisdiction here in the petition to rescind. The people asked this court to reverse the trial judge's grant of the motion to suppress and to remand for further proceedings under the DUI charge. We asked this court to vacate the trial judge's decision to grant the defendant's position as this is void due to lack of subject matter jurisdiction. Thank you, counsel. Thank you, members. Counsel, you may proceed. Please, the court. Counsel? I would like to address the first argument that was presented by counsel in this. Regarding whether the trial court erred in granting the motion to suppress in this case. As the court is well aware, a review in court will uphold findings of historical fact made by a certain court unless the findings are against the manifest weight of the evidence. The differential standard of review is grounded in the reality that the court is in a superior position to determine the weight and credibility of the witnesses, observe the witnesses' demeanor, and resolve conflicts in this testimony. What you had here was a situation where there was a motorcycle accident. It's not in dispute. What is in dispute is everything else after that, because what you've got is a police officer that shows up on the scene, action has already taken place, and as the trial court indicated multiple times in her findings, nothing else was really done. He asked a few questions of somebody who he believed had seen the accident, but he made no inquiries of this security officer. What he did, he asked a couple questions. The security officer made a comment that believed that the person, Mr. Motchkow, was traveling at a high rate of speed. He doesn't know what the rate of speed is. He made no investigation. He did no follow-up questions. He didn't ask about any of the training of this security officer. He didn't even inquire as to what the security officer was doing during the observation period. Was there a computer that this person is looking at? What was the person doing? How long did he observe Mr. Motchkow, or did he just glance up and see an accident? None of that was answered, because those questions were never asked. As far as Mr. Motchkow, he asked Mr. Motchkow three questions. It was clearly on video that he was there for 12 minutes. The problem with this is that the credibility of Mr. Bischoff, the officer in this case, comes into question, because during this time, he was asked multiple questions. He was asked if he inquired further with Mr. Motchkow into how this accident took place. He tried to mislead the court in saying that he actually had, but he didn't put it in his report, so I pressed him on the issue. I said, are you trained in report writing? Yes. What do you put in there? All the facts known to you at the time. I said, well, wouldn't it be important for you to put the facts of how this happened, that Mr. Motchkow told you this? Wouldn't that be important to put in your report? Yeah. He said, well, I did two reports. I did this report. I did an accident report. So I produced that one. I had him read it out loud. He agreed they were identical. He cut and pasted the answers. So the court's looking at this and judging the credibility of Officer Bischoff at this point in time because he's trying to change his answers. So what do we have? He said that the person who was the security guard smelled an odor of alcohol when he went over to Mr. Motchkow. I asked him about that. Does alcohol produce a smell? No. So it would be inaccurate, this observation from the security guard. Yes. Well, counsel points out that Mr. Motchkow said he was traveling from downtown Curry and he made a point that he was being evasive somewhat in his answers to Officer Bischoff. I pressed Officer Bischoff on that. I said, when you pressed further and asked my client where he was coming from, did he tell you? Yes. He said he was coming from Morton, which is just across the river. Bischoff even testified that that's a normal route somebody would take to get from Morton, going through downtown Curia and then traveling on his way. There's no indication he was traveling erratically. There's no indication of anything other than an accident taking place. Mr. Bischoff told him that he had one 20-ounce beer. It's now 11-something in the evening. Mr. Bischoff, Officer Bischoff in this case, tries to say that his eyes are bloodshot and red. I asked him, did you inquire into why that might be? Did you say, it's August, did you ask if he had any allergies? Asked if he's been in a smoky environment, how long he's been up? Did you even ask or take into account the fact he's just been in an accident and there may have been gravel that flew into his eyes? No, I didn't. How did you get to this assumption, then, of taking this as some sort of indicator of intoxication? Well, because he said he had something to drink and I could smell it on his breath. We got into a discussion, can you tell how much somebody's had to drink by this odor of alcohol in their breath? At first he tried to say he could. Well, then he tried to recant that and said there's absolutely no way he can tell through any of his training or anything else, based upon the smell of an odor of an alcohol beverage coming from somebody, how much they've had to drink or what they've had to drink. So again, the judge is observing this because she's in the best position to see this. So what happens at this point, he asks him three questions, takes him to the hospital. At this point, he could interview anybody who's there. The AMT people were there. He could talk to them. He goes to the hospital. He could talk to the doctors. All this could take place, but he doesn't do that. He administers HGM. This becomes an issue again with the judge because it was asked, and he did testify that HGM, according to his training, over the time he's been trained as a police officer, it can indicate levels of intoxication in people. That was his testimony, which is contrary to McAllen. Now we can't look at, the judge even asked me, are you objecting to the way he did perform the HGM test? The judge said, I can't. I don't know how he did it because it's not on video. He did it at the hospital. So what we've got is an inexperienced officer not conducting an investigation, jumping to assumptions, and then administering one test to my client and believing that that test will give you levels of intoxication. It doesn't. McAllen says that. And the judge takes it into account when she's going and making her ruling against Mr. Bischoff, and this is finding him not to be credible. She finds him and says in her ruling multiple times, I don't find him credible because of his inexperience. And we also get into what Bischoff was saying, is that he's actually profiling this area of town because he made the comment that he arrested my client partially because of the time of night and where he was coming from the downtown area because he said it was a high-drug and high-DUI area. And I asked him, does that mean that you automatically would arrest people any time you stopped them coming to this area? His comment was, I wouldn't say I would necessarily arrest them. So his presupposition to this whole thing is, if you're down there, you've had anything to drink at this time of night, you're DUI, and that's where we're working from. You don't start off with the presumption of innocence. You start off guilty with DUI. And this goes to the PBT test. This is the most glaring example because I asked him. He said, my client refused the PBT. We admitted that. That was brought out in court. The judge even took that into consideration. But I asked him, I said, so, if my client would have performed the PBT test and blew under .08, you'd have let him go, correct? No. Why not? Well, because that doesn't prove anything. I'm just using it to prove what I see. So I said, so no matter what, whether you've taken the PBT test or not, whether you passed it or not, you would have been arrested for DUI that night. Yes. And it goes down to what the judge found. She found that this was not an objective person. This was a subjective view from this police officer. He used his subjective view by not doing an investigation, assuming he knows what's going on, and assuming through his profiling that if you're coming from this area, you're going to be DUI. And that was the reason that she found him not credible. She found him not credible based upon how he interpreted McCowan, how he said McCowan works with the HGN, and with how he didn't do an investigation. And you've read in the brief where she points out in her own words that there was no investigation really done here. And so that's how we get to this point. That's why she found no probable cause. And a mere suspicion is not good enough for a probable cause. It takes more than that, which is what he's done. He's got a mere suspicion something's going on. So the judge, she found no probable cause, and she had good reason to find him because she's the one that's listening to all this testimony. She's watching and observing. She's watching when he doesn't answer questions. When he tries to get around actual questions posed to him. And that's why she finds him not to be credible, also based upon his inexperience. We get into the second part of the appeal. For the motion to reconsider, I would just point out in this that the judge went into detail. She found there's three reasons why people bring a motion for reconsideration. And she found that there wasn't any evidence here. What they tried to bring in, and what you keep hearing from counsel, is it's all post-arrest. They wanted to bring in records from the hospital. And also in the HGN, I'll just point out, he'd just been involved in an accident. He didn't take into consideration head injuries and how that can affect HGN. He could have asked a doctor, hey doctor, could this affect the HGN? He didn't do that. So what they want to do now, they want to bring in post-hearing, post-arrest, medical records. And say, well, let's look at these and see if this helps us. And again, it's what the officer knew at the time of the arrest. That's all that counts for probable cause. It's completely inappropriate to try to bring in evidence post-arrest into a motion to suppress hearing. Because it's all about, for probable cause, what did he know at that moment in time? Nothing else matters, what he learned later. But that's what they're trying to do here. And that's why the judge shut it down. She said no. It's all about the pre-arrest part of this. And we talk about... What about the statutory language that Mr. Austell cited? That's a great point, Your Honor. The statutory language in this, the problem is they leave out the actual language that's left in there. Because the first part of it talks about the summary suspension part of it that you have to test. That a police officer can do that and that you can be subject to having those results, your refusal or whatever, used in trial against you. The problem is if you look at C2 in there. It states, only upon probable cause to be arrested for DUI can the officer demand that you actually submit to a test. Okay? You can't get to 1 until you've met 2. And that's the problem. They keep wanting to bring it up, and it goes over and over again in their brief about that she was reading the language in C1. And it says that this could be used in any hearing, which it can, except when you don't have probable cause. And this comes in the Boomer case. In the Boomer case, it talks about this because there was one where they were trying to bring it in, and no probable cause existed. And at the conclusion of that case, it says under this provision, no driver is clinically tested unless the person has been arrested based upon the existence of probable cause for a non-equivalent violation of the vehicle code. So this has already been addressed in Boomer, that you can't get to reducing these facts into evidence unless you've had probable cause to arrest somebody for DUI, which Bischoff clearly lacked according to Judge Wilson in this case. Thank you. So you can't get to that point. Going to the third issue, and I just want to touch on this briefly since I've got 2 minutes left. The issue in this part is that the judge lacked subject matter jurisdiction to actually hear the petition to rescind. There's no doubt that the petition to rescind was filed timely by us. We have 90 days to do that, and we did it within the time frame. By statute, the state has 30 days to hold a hearing on this matter. The only way that 30 days can be told is by the petitioner. It cannot be told by the state. The only thing that they filed at that point, the motion to appeal on, was the criminal matter. There's no argument that the petition to rescind is a civil matter. And so it's a completely separate matter. There is no, and they provided absolutely no case law to show how they can extend the time on that statute beyond the 30 days by appealing it, by filing some certificate of encumbrance that gets them to that point. So the judge had to hear that. Once we filed it and set it for hearing, the judge had to hear that within 30 days, or by statute she had to dismiss and grant our motion to rescind the summary suspension. So they provided absolutely no case law to show you how to get around that. The statute is absolutely clear in that what you have to do, and that is under 625 ILCS 5-2-118.1b. It says that. You just can't get around that. And so she absolutely had subject matter jurisdiction to handle that, because had she not handled it, she would have been forced to dismiss it or to grant our petition and grant the summary suspension and rescind it. So at the point, I'm running out of time here, based upon all the stuff that we put in our brief, all the evidence that took place, and the findings of the judge that this officer was not credible, she's the one that witnessed this. She witnessed the lack of investigation, the lack of follow-through, jumping to conclusions, profiling. And clearly where statutes prevent post-arrest information from coming in and being used, we would ask you to deny the motion and affirm the court's decision in this matter. Thank you, Your Honor. Thank you, Counsel. Counsel, you may proceed. Your Honors, Counsel mentioned that the defendant said he came from Morton through downtown Peoria, but the defendant only made that statement after the officer had twice asked him, where did you come from? And he said, downtown Peoria. Then the officer said, did you come from Morton? And that's when the defendant said, yes, I did. So he was prompted, he was given that opportunity to, oh, yes, I came from Morton, instead of just from downtown, because at that time of night, downtown Peoria, nothing's open, 1145, except bars and clubs. So it makes sense that the defendant would have been at a bar or a club at that time of night if he was stating twice that he came from downtown Peoria. Of course, that's not a crime. That's not a crime. But the implication is that he would have been in a place where alcohol was served and he admitted that he had been drinking at least one 20-ounce beer is what he said, but we have the later uniform report from DHS where he actually stated that he drank six beers within five hours. So, you know, what he said later was contrary to his own testimony. And probable cause does not require an officer to know a defendant's blood alcohol content, just that there is evidence that the defendant drank alcohol and displays signs of intoxication. McAllen, regarding the HGN test, McAllen said that the test can show intoxication and impairment, but it doesn't show specific alcohol levels. Mr. Bischoff did not say that the HGN test would show a specific alcohol level, just that it would show intoxication or impairment. An objective test would have been the chemical test, but, of course, the defendant refused those, and the trial judge refused to allow the evidence of those refusals based on her interpretation of 11-501.2C1. And regarding probable cause under C2, well, even though this may not have been, for the sake of argument, I'll say his investigation could have been more detailed, more complete, but he had enough information already for probable cause because he failed the HGN test, he had glassy bloodshot eyes, he had a single vehicle accident on a dry, clear night with no apparent gravel or other materials in the road that would have caused the accident. The security guard said he'd been traveling at a very high rate of speed when he approached the curve and that the guard also smelled the odor of alcohol. He asked the defendant if he had any problems. He said, I'm blind in the right eye, but he didn't say, and I hit my head during this accident. Medical personnel never said a word about a head injury to him, and, in fact, they left the defendant alone in a room. If he had a head injury, they suspected a head injury, they would have been treating him, taking him for testing. They would not have left him alone to be interviewed by an officer. Thank you. That's all I have in response, Your Honors. Thank you, Counsel. The Court will take this under advisement and render a decision promptly. Thank you, Your Honors. We'll recess to the next panel. Please rise. Court is adjourned.